IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>     vs.<br><br>EDWARD MARKHAM,<br><br>             Defendant. | CASE NO. CR F 08-065 LJO<br><br>**ORDER ON DEFENDANT'S 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE** (Doc. 65) |
| EDWARD MARKHAM,<br><br>             Petitioner,<br><br>     vs.<br><br>UNITED STATES OF AMERICA,<br><br>             Respondent | CASE NO. CV-10-855 LJO |

**INTRODUCTION**

Defendant/Petitioner Edward Markham ("Mr. Markham") is a federal prisoner, proceeding pro se, who moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 ("section 2255"). Having considered Mr. Markham's section 2255 motion on the record, this Court DENIES Mr. Markham's section 2255 motion.

///

1

**BACKGROUND**

**Charge and Trial**

A March 6, 2008 indictment charged Mr. Markham with a one-count violation of 18 U.S.C. §922(g)(1), felon in possession of a firearm. Mr. Markham pleaded not guilty to the charge. A 2-day jury trial began on December 1, 2008. During the trial, the following evidence was presented:

Dennis Lowry ("Sergeant Lowry"), sergeant with the Fresno Police Department, and supervisor in charge of the tactical team, testified first for the government. Sergeant Lowry testified that the tactical team's search for a wanted felon led them to suspect that the individual was located inside of a certain residence. Members of the tactical team witnessed Mr. Markham leave the residence, and mistakenly believed Mr. Markham was the subject of the investigation. Mr. Markham walked from the house to the passenger seat of a gold Ford Taurus that was parked in the driveway of the residence. After receiving the false identification and a request from officers closer to the residence to stop the vehicle, Sergeant Lowry initiated a traffic stop of the vehicle shortly after the vehicle drove away. Sergeant Lowry turned on both his red and blue lights and a spotlight on the vehicle. Before the car came to a complete stop, Mr. Markham jumped out of the car and ran. Sergeant Lowry did not attempt to chase Mr. Markham because other police officers were covering the area where Mr. Markham ran. Instead, Sergeant Lowry proceeded to the vehicle to check the driver. A search of the vehicle and driver produced no weapons. Sergeant Lowry saw an object in Mr. Markham's hand as he exited the vehicle, but he could not tell what the object was. Sergeant Lowry recalls that the object in Mr. Markham's hand was dark in color. He did not see a light color or silver. Sergeant Lowry could not identify the object in Mr. Markham's hand as either a gun or a cell phone.

Timothy Edwards ("Officer Edwards"), a Fresno Police Officer and member of the tactical unit, testified on behalf of the government. Officer Edwards observed Mr. Markham, and thought he was the subject of the investigation. Officer Edwards so indicated to Sergeant Lowry, and asked him to initiate the traffic stop. Officer Edwards saw Mr. Markham, who was a passenger in the car, jump out of the car and run. Officer Edwards began to chase Mr. Markham immediately. Once he got behind Mr. Markham in the chase, Officer Edwards saw a gun in Mr. Markham's hand and broadcast over the police dispatch radio that he was chasing a man with a gun. Specifically, Officer Edwards saw a black revolver

in Mr. Markham's hand. Officer Edwards also called out to Officer Rosetti, who was running behind Officer Edwards, that Mr. Markham had a gun. Officer Edwards chased Mr. Markham. Mr. Markham stumbled, and Officer Edwards used his Taser on Mr. Markham. Officer Edwards saw Mr. Markham throw the gun with his left hand and heard something hit a wooden fence nearby. After Mr. Markham was secured, Officer Edwards walked to the fence where he heard the noise, and found a loaded black revolver on the ground. Officer Edwards retrieved the gun, unloaded it, and bagged the gun and ammunition into evidence. Officer Edwards requested fingerprint analysis of the gun and bullets. Officer Edwards testified that there was no question that what he saw was a gun in Mr. Markham's hand, and that it was not possible that he saw Mr. Markham holding a cell phone. Officer Edwards does not recall seeing a cell phone and testified that Mr. Markham did not have a cell phone in his hand when he was taken into custody.

At the end of Officer Edward's testimony, the government played an audio exhibit of the dispatch recording of the incident. In the audio exhibit, Office Edward's call number and voice indicates that someone is at the door of the residence, the suspect entered the passenger-side of the car in the driveway, the passenger of the car leg bailed, the passenger has a gun, and then Code 2 for a Taser requesting medical assistance.

The third witness from the government was Spring Wilson ("Ms. Wilson"), a Fresno Police Department Crime Scene Bureau Investigation technician. Ms. Wilson testified that in her experience, it is uncommon to get fingerprints from a gun, because the grip usually is made of porous material (e.g., wood) or a grainy material (e.g., plastic). In addition, Ms. Wilson testified that the way a person grips a gun can distort the fingerprints. As for ammunition, although bullets have an ideal surface for a fingerprint, the surface area of ammunition is small. Ms. Wilson performed fingerprint analysis on both the gun and the ammunition found at the scene. Ms. Wilson found no prints on the gun and no prints on the bullets. According to Ms. Wilson, she has never found fingerprints on ammunition, and has found fingerprints on a gun four out of 75 times.

On recall, Officer Edwards testified that he did not see Mr. Markham wearing gloves.

The first defense witness was Steven Castro ("Sergeant Castro"), sergeant in charge of the Fresno Crime View Bureau. Sergeant Castro explained crime statistics for the zone in which the incident took

3

1  place, including the number of robberies, stolen cars, assaults, and arson. In the half mile square in
2  which the incident took place, from November 2007 through November 2008, a total of 1,715 total
3  police calls were made. Of those, two calls were made for "shots at a structure," and sixteen other
4  weapons offenses were called. For the other offenses, there is no indication of whether a gun was used.
5  For example, a burglary in which a gun was stolen would be classified as a burglary, not as a gun
6  offense. There were twelve burglary calls in the area during the one-year time period.

7  Next, the defense called Harold Rogers ("Mr. Rogers"), the driver of the gold vehicle pulled over
8  in the incident. Mr. Rogers is 20 years old and unemployed. Mr. Rogers has not graduated from high
9  school. Mr. Rogers testified that he did not know Mr. Markham well. They only met a few times.
10 Before the incident, Mr. Rogers did not know Mr. Markham's name. Inside the house, Mr. Markham
11 asked Mr. Rogers for a ride home, and Mr. Rogers agreed. Mr. Rogers testified that he "didn't see [Mr.
12 Markham] with nothing." Mr. Rogers did not see Mr. Markham with a gun in the house or the car. Mr.
13 Rogers did not see Mr. Markham with a cell phone, either. Mr. Rogers testified that he was taken from
14 the car at gunpoint, handcuffed, and placed in the back of a police car. Two or three police officers
15 questioned him while others stood by. He was scared. According to Mr. Rogers, he initially lied and
16 said that the initial subject of the investigation was in the house. Mr. Rogers told the officers that he
17 knew nothing. Then, a detective in plain clothes came to question Mr. Rogers. According to Mr.
18 Rogers, the detective threatened Mr. Rogers and told him that Mr. Rogers will go to prison unless he
19 says that Mr. Markham had a gun. At some point during the questioning, a police officer threw a gun
20 on the trunk of the vehicle holding Mr. Rogers, and he saw the gun. Officers told Mr. Rogers that they
21 found a gun with Mr. Markham and asked him if he saw the gun. Mr. Rogers denies telling the detective
22 that he saw a gun or that he gave a description of Mr. Markham and the gun. Eventually, Mr. Rogers
23 was released from the back of the police vehicle. Mr. Rogers received no citation that evening.

24 Victor Torres ("Mr. Torres"), a staff investigator with the Federal Defender's Office, testified
25 on behalf of the defense. Mr. Torres went to the jail and got a record of Mr. Markham's property and
26 property release. According to the document, Mr. Markham was in possession of a cell phone and
27 chewing gum at the time he was booked into the jail. The cell phone and gum were released to Cassandra
28 D. Johnson.

1    Art Rodriguez ("Detective Rodriguez"), Fresno City police detective, was called by the defense. Detective Rodriguez questioned Mr. Rogers while he was detained in the back of the police vehicle during the incident. Detective Rodriguez testified that initially Mr. Rogers said that there was no gun, but then changed his story. Mr. Rogers told him that Mr. Markham ran from the car holding a gun in his right hand. Detective Rodriguez was informed by Officer Edwards that Mr. Markham discarded a gun after running from the vehicle. Detective Rodriguez wrote in his report that Mr. Markham had a gun in his right hand based on Mr. Rogers' statement. Detective Rodriguez also testified that Mr. Rogers told him that Mr. Markham was holding a revolver type gun with shiny chrome finish and a black grip. Detective Rodriguez stated that Mr. Rogers told him: "I never touched the gun. Mr. Markham had the gun the entire time." Detective Rodriguez testified that he did not threaten Mr. Rogers, but did explain that a gun was transported in a vehicle that he was driving.

Defendant Edward Markham took the stand. Mr. Markham testified that when he saw lights on the police car light up, he did not know what was happening and did not want to be near the car, so he ran. Mr. Markham testified that he did not have a gun, and did not throw a gun near the fence. Mr. Markham stated that he had a pre-paid Samsung cell phone in his left hand when he jumped out of the car and ran. When he was hit with the Taser, he fell forward. At that time, the cell phone must have fallen out of his hand. Mr. Markham thinks that he kicked the cell phone and made it spin after he was detained. Mr. Markham testified that he carried his cell phone with him out of habit, because (1) he had no clip to secure it to his body; (2) his pockets were too deep and he thought it would fall out of his pockets; and (3) he loses cell phones all of the time. Mr. Markham testified that the police took his cell phone in a plastic bag and showed it to him at the jail.

Sergeant Lowry was called by the defense and again testified that he did not see the object in Mr. Markham's hand clearly.

During the two-day trial, only one significant objection was made. Mr. Markham had testified that he pled guilty to other crimes and took plea bargains, but did not take a plea bargain in this. Mr. Markham's trial counsel asked a question related to the specifics of a plea agreement in this action, and the government objected. At side bar, the Court advised Mr. Markham's trial counsel that the government's objection was overruled, but cautioned both sides that Mr. Markham's statement would

5

1  open the door to allow the government to ask details regarding other plea agreements, including one plea
2  agreement that allowed Mr. Markham to avoid a charge of attempted murder with a gang enhancement.
3  Having considered the situation, Mr. Markham's trial counsel chose to withdraw his question, and the
4  question was stricken from the record.
5        The unanimous jury found Mr. Markham guilty of count one in the indictment, returning with
6  a verdict on December 2, 2008.

## Sentencing and Appeal

8        Mr. Markham appeared for sentencing on February 27, 2009.  Mr. Markham's trial attorney
9  argued that the Court should adopt the probation office's guideline recommendation of 63 to 78 months.
10 The Court considered that Mr. Markham was a "career criminal" with an extensive criminal record, that
11 Mr. Markham was on parole at the time of the incident and was a former gang member with a drug use
12 history.  The Court commented that Mr. Markham had been in trouble every year since he was 10 years
13 old, and that he was violent and uncontrollable.  Based on these considerations, the pre-sentence report
14 prepared by the probation office, and the applicable sentencing guidelines, the Court sentenced Mr.
15 Markham to a total term of 120 months in prison, and 36 months of supervised release.  On March 17,
16 2009, this Court ordered judgment and commitment of Mr. Markham.

17       Mr. Markham filed a notice of appeal on March 3, 2009. On March 17, 2009, Mr. Markham's
18 appellate counsel requested transcripts of the November 14, 2008 motion in limine hearing, December
19 1, 2008 and December 2, 2008 trial proceedings, and February 27, 2009 sentencing.  The certificate of
20 record, including the transcripts of the motion in limine hearing, the trial proceedings, and the
21 sentencing, was transmitted to the United States Court of Appeals for the Ninth Circuit on April 29,
22 2009.

23       On appeal, Mr. Markham's appellate attorney argued that the Court's upward departure of Mr.
24 Markham's sentence was unreasonable and an abuse of discretion.  In the opening appellate brief, filed
25 on April 28, 2009, Mr. Markham's appellate counsel argued that the Court failed to identify special or
26 unusual factors to justify the upward departure.  Mr. Markham's counsel pointed out that although Mr.
27 Markham had a significant criminal record, most of the criminal history involved stale, juvenile records.
28 Mr. Markham further pointed to a 1995 evaluation of Mr. Markham that determined Mr. Markham was

not a danger to the community and possessed low intelligence and bad judgment. Moreover, Mr. Markham's offense of assault using an automatic rifle with gang enhancement occurred nine years earlier, and the alleged victim in that case also had a firearm and returned fire at Mr. Markham. Mr. Markham's counsel argued that the guidelines took into account that he was on parole at the time of the offense, and that the Court relied on criminal conduct reported inappropriately in the pre-sentencing report. Finally, Mr. Markham's counsel argued that the 120-month sentence was unreasonable. The Ninth Circuit rejected Mr. Markham's arguments, and a memorandum decision affirming this Court's 120-month sentence issued on January 11, 2010.

### Section 2255 Motion

Mr. Markham filed his section 2255 motion on May 13, 2010. In his motion, Mr. Markham asserts the following claims:

1. Denial of Effective Assistance of Counsel on Appeal;
2. Conviction Obtained by Unconstitutional Failure of the Prosecution to Disclose Favorable *Brady* Material;
3. Denial of Right to Appeal;
4. Conflict of Interest by Trial Attorney; and
5. Ineffective Assistance of Trial Counsel for Failure to Call Fingerprint Analyst to Rebut Government's Witness.

The Court ordered the government to respond to Mr. Markham's motion on June 16, 2010, and extinguished that order on June 30, 2010. Having considered Mr. Markham's claims, relevant case law, and the record, this Court issues the following order.

### DISCUSSION

### Procedural Default

A section 2255 motion is not to be used as a substitute for a direct appeal. If the type of claim is one normally raised on direct appeal–i.e., a record-based claim–it is barred from section 2255 review absent a showing of cause and prejudice. *See Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (holding that defendant procedurally defaulted section 2255 claim by failing to raise claim on direct appeal because claim was based exclusively on facts contained in the transcript); *see also, Massaro v.*

*United States*, 123 S.Ct. 1690, 1693 (2003) (stating in dicta that "claims not raised on direct appeal may not be raised on collateral review"); *English v. United States*, 42 F.3d 473, 477 (section 2255 movant barred from raising claim if he or she committed "double default" by violating procedural rule in trial court and failing to raise the issue on direct appeal).

Some of Mr. Markham's claims should have been raised on direct appeal. In this motion to vacate or set aside his sentence, Mr. Markham does not challenge his sentence. Mr. Markham's second, fourth, and fifth claims relate directly challenge the underlying trial, rely on the facts and the transcript, and challenge the adequacy and conduct of the trial attorney. Mr. Markham's claims related to effective assistance of his appellate counsel, however, suggest that that the failure of Mr. Markham to raise the trial-related issues on appeal may constitute ineffective assistance of his appellate counsel. In addition, Mr. Markham raises Constitutional questions that this Court may consider on a section 2255 motion. Accordingly, this Court considers the issues raised by Mr. Markham to determine whether Mr. Markham's claims demonstrate cause and prejudice to allow these issues to be raised in a section 2255 motion.

**Failure to Disclose *Brady* Material and Conflict of Interest**

The Court first considers Mr. Markham's challenges to his trial counsel.

In his second claim, Mr. Markham alleges that the government failed to turn over exculpatory information. Specifically, Mr. Markham contends that a statement by the "handcuffing arresting officer" that the officer "never saw" Mr. Markham with a gun was not turned over to the defense prior to trial. Rather, Mr. Markham contends that this information was reported to Mr. Markham only after the trial by his trial counsel.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Brady* and its progeny require a criminal defendant to prove three elements in order to show a *Brady* violation. *Benn v. Lambert*, 283 F.3d 1040, 1052 (9th Cir. 2002). First, the suppressed evidence must be exculpatory or impeachment material favorable to the defendant. *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Second, the evidence must have been suppressed by the State, either willfully or

inadvertently–thus requiring the defendant to establish that the prosecution knew or should have known during the proceedings of the evidence's existence and that the defendant did not possess the evidence, nor could he have obtained it with reasonable diligence. *See United States v. Agurs*, 427 U.S. 97, 110 (1976); *see also U.S. v. Zuno-Arce*, 25 F.Supp.2d 1087, 1116 (C.D. Cal. 1998); *accord U.S. v. Aichele,* 941 F.2d 761, 764 (9th Cir. 1991); *U.S. v. Dupuy*, 760 F.2d 1492, 1502 n.5 (9th Cir. 1985).  Third, a defendant must establish that prejudice resulted from the failure to disclose the evidence as "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682.

      Mr. Markham's second claim fails for a number of reasons.  First, the alleged statement by the arresting officer that he did not see Mr. Markham with a gun is not exculpatory.  The arresting officer did not allegedly state Mr. Markham had no gun; the statement is that the officer allegedly did not see Mr. Markham with a gun.  Second, Mr. Markham presents no evidence to support his position that the government failed to provide this information.  Indeed, Mr. Markham's further statements suggest that the government did turn over the information to his trial counsel, as Mr. Markham faults his counsel for failing to tell him about the alleged statement until after the trial.  This information suggests that the government did turn the information over to Mr. Markham's trial counsel.  Third, even if the statement were exculpatory, and even if the government failed to turn the evidence over to the defense, the Court finds that its alleged suppression did not undermine the confidence in the outcome of the trial. According to the evidence presented at trial, Officer Edwards was running behind Mr. Markham as Mr. Markham ran from the vehicle. Officer Rosetti, the arresting officer, was behind Officer Edwards during the chase and did not arrive on the scene until after Officer Edwards perceived Mr. Markham to throw the gun against the nearby fence.  Because the arresting officer was farther away from the Mr. Markham, and behind Officer Edwards, evidence at trial suggests that he would be unable to see whether Mr. Markham had a gun.  As discussed more fully below, the jury had substantial evidence to find Mr. Markham guilty on the count charged notwithstanding the statement that Officer Rosetti did not see Mr. Markham with a gun.  Accordingly, this Court DENIES Mr. Markham's second claim.

In his fourth claim, Mr. Markham alleges that his trial attorney impermissibly failed to disclose a conflict of interest. Mr. Markham asserts that his trial attorney had a conflict of interest because although the attorney knew about the statement by the arresting officer that the officer did not see Mr. Markham with a gun, the trial attorney failed to reveal that exculpatory evidence to Mr. Markham.

Pursuant to the Sixth Amendment of the United States Constitution, criminal defendants have the right to effective assistance of counsel, which includes the right to counsel free of conflicting interests. *Lewis v. Mayle*, 391 F.3d 989, 997 (9th Cir. 2004) (citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981). "The Sixth Amendment ensures that a criminal defendant has the right to representation that is free from conflicts of interest and the assistance of counsel whose loyalties are not divided." *Id.*; *see also, United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). "To obtain relief under the Sixth Amendment, a defendant who does not object to a potential conflict of interest at trial must show that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Lewis*, 391 F.3d at 997 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). "A defendant who makes this showing need not show prejudice to the outcome of the trial." *Id.* [1]

Mr. Markham fails to establish a conflict of interest between him and his trial counsel. A conflict of interest arises when the loyalty of an attorney is compromised or called into question, or affects the attorney's behavior. For example, a conflict of interest may arise when an attorney represents more than one party in the same or similar proceedings, including co-defendants; more than one attorney from the same law firm or legal organization represents co-defendants in an action; an attorney represents a party and a witness at separate proceedings; an attorney is affiliated with the government and there is a prosecution against the client; or an attorney is affiliated with an organization that has adverse interests to the client. But an attorney does not have a conflict of interest with his or her client based on the allegation that the attorney had information that an arresting officer did not see the defendant had a gun. In addition, Mr. Markham has failed to demonstrate that his "attorney's behavior seems to have been influenced by the conflict." *Sanders v. Ratelle*, 21 F.3d 1446, 1452 (9th Cir.1994). Here, based on the totality of the evidence presented at trial, it was reasonable for the attorney to make the strategic decision

---

[1] Mr. Markham may seek relief based on his Sixth Amendment conflict-free counsel claim through a section 2255 post-conviction motion. *U.S. v. Mett*, 65 F.3d 1531, 1537 (9th Cir. 1995).

not to call the arresting officer to testify. The failure to call the arresting officer as a witness does not suggest a conflict of interest between the attorney and the client. Accordingly, Mr. Markham's fourth claim is DENIED.

### Ineffective Assistance of Trial Counsel

In his fifth count, Mr. Markham contends that his trial counsel provided ineffective assistance of counsel because he failed to call an expert witness to clarify contradictory testimony of the government's expert. Mr. Markham contends that although the government's theory was that the gun was in Mr. Markham's left hand, there was testimony presented that the gun was in his right hand. Mr. Markham argues that his trial counsel's failure to call a fingerprint analyst to rebut the government's expert or to clarify the contradictory evidence constituted a denial of his Sixth Amendment right to counsel.

When considering an ineffective assistance of counsel claim, a court must consider two factors. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). The first factor is whether the counsel's performance fell below an objective standard of reasonableness considering all of the circumstances. *Strickland,* 466 U.S. at 687-688, 104 S.Ct. at 2064; *Bloom v. Calderon*, 132 F.3d 1267, 1270 (9th Cir. 1997), *cert. denied*, 494 U.S. 1039, 118 S.Ct. 1856 (1998). A defendant must demonstrate that counsel's performance was deficient and that counsel made errors so serious not to function as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. A defendant must identify counsel's alleged acts or omissions that were not the result of reasonable, professional judgment considering the circumstances. *Strickland*, 466 U.S. at 690, *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848, 117 S.Ct. 135 (1996). There is a strong presumption that counsel's performance fell within the wide range of professional assistance. *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586 (1986) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 677-678; 104 S.Ct. at 2063; *Quintero-Barraza*, 78 F.3d at 1348.

The second factor for court consideration is whether the petitioner has proven prejudice affirmatively. *Strickland*, 466 U.S. at 693. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at

694. A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." *Id*. In addition, the court can find prejudice only when the outcome would have been different without counsel's errors. *See Lockhart*, 506 U.S. at 369-370. A court must also evaluate whether the entire proceeding was fundamentally unfair or unreliable because of counsel's ineffectiveness. *See Lockhart*, 506 U.S. at 369-370; *Quintero-Barraza*, 78 F.3d at 1345; *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994).

Mr. Markham faults his trial counsel for failure to call a witness to rebut the government's expert witness regarding fingerprint testimony. According to the government's expert witness Ms. Wilson, however, no fingerprints were found on either the gun or the ammunition. Because Ms. Wilson's testimony did not incriminate Mr. Markham, Mr. Markham's counsel reasonably chose not to call a rebuttal expert witness.

The conflicting evidence came not from the expert witness, but from Officer Edwards and Detective Rodriguez. Officer Edwards testified that he saw the gun in Mr. Markham's left hand. Detective Rodriguez testified that after initially denying the existence of a gun, Mr. Rogers told him that he saw a gun in Mr. Markham's right hand. Detective Rodriguez wrote that information in his report. Mr. Rogers, however, testified that he did not give that information to Detective Rodriguez. It was within the province of the jury to determine, based on the credibility of the witnesses and other factors, whether to believe the testimony of Officer Edwards or the statement allegedly made by Mr. Rogers to Detective Rodriguez, but that Mr. Rogers denies making. The resolution of the conflicting testimony did not depend on the expert witness, because Ms. Wilson found no fingerprints. Thus, the expert analysis did not address whether Mr. Markham was holding the gun in his right or left hand.

Having considered the evidence presented at trial, and for the foregoing reasons, this Court finds that Mr. Markham's trial counsel's failure to call a fingerprint analyst to rebut the government's witness does not constitute performance that fell below an objective standard of reasonableness considering all of the circumstances. In addition, Mr. Markham's failure to call a rebut witness did not cause prejudice, as Ms. Wilson found no fingerprints on the gun and ammunition. As such, her expert testimony did not incriminate Mr. Markham, and no rebuttal expert witness was necessary. Accordingly, Mr. Markham's fifth claim is DENIED.

**Ineffective Assistance Of Appellate Counsel**

The Court now turns to Mr. Markham's challenges to his appellate counsel.

In his first count, Mr. Markham alleges ineffective assistance of his appellate counsel. Mr. Markham asserts that his appellate counsel failed to represent his appeal adequately, because he: (1) failed to challenge his conviction on the sufficiency of the evidence; and (2) failed to order a jury trial transcript to appeal preserved objections.

As set forth above, Mr. Markham's appellate counsel did order jury trial transcripts, which were submitted to the appellate court. Accordingly, the second part of Mr. Markham's claim is dismissed as factually incorrect and meritless.

The Court considers whether Mr. Markham's appellate attorney's failure to challenge his conviction on appeal establishes a violation of his Sixth Amendment right to counsel. The Due Process Clause of the Fourteenth Amendment to the United States Constitution forbids a criminal conviction based on evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979) (superceded on other grounds by 28 U.S.C. §2254(d)); *Tibbs v. Fla.*, 457 U.S. 31, 45 (1982). In criminal cases, a jury verdict must stand if it is supported by "substantial evidence." *See, e.g., United States v. Hanna*, 293 F.3d 1080, 1088 (9th Cir. 2002). Substantial evidence is evidence which reasonable minds might accept as adequate to support a conclusion. *See United States v. Nordbrock*, 38 F.3d 440, 445 (9th Cir. 1994). Substantial evidence means more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). The court must affirm where there is such relevant evidence as reasonable minds might accept as adequate to support a conclusion, even if it is possible to draw contrary conclusions from the evidence. *See Howard*, 341 F.3d at 1011. Neither the trial court nor the appellate court may weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999); *see also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) ("The credibility of witnesses is an issue for the jury and is generally not subject to appellate review.").

To be convicted of the charge of felon in possession of a firearm, the government needed to

prove beyond a reasonable doubt three elements:

    (1)    That the defendant knowingly possessed a firearm;

    (2)    That the firearm was transported in interstate commerce; and

    (3)    That the defendant was previously convicted of a felony.

Mr. Markham stipulated to the second and third elements of the crime on the record, to admit that the firearm was transported in interstate commerce (having been found in California and manufactured outside of California) and that he was previously convicted of a crime punishable by more than one year in prison. Thus, the sole element that the government needed to establish at trial was whether Mr. Markham knowingly possessed a firearm.

    Having reviewed the trial record, the Court finds that the jury had substantial and sufficient evidence to find Mr. Markham guilty of the charged offense. Officer Edwards testified that he saw Mr. Markham with a gun as he was running behind him in the chase. Officer Edwards further testified that he saw Mr. Markham throw the gun and heard the gun hit a nearby fence. When Officer Edwards investigated the front of the fence where he heard the sound, he found a black revolver. The audio dispatch exhibit supported Officer Edward's version of events that he saw and gun, chased Mr. Markham, and then used his Taser on Mr. Markham to end the pursuit. Sergeant Lowry testified that he saw a dark object in Mr. Markham's hand when he exited the vehicle. The revolver found by Officer Edwards was black. The defense presented testimony by Mr. Markham that he did not have a gun. In addition, Mr. Rogers testified that he did not see Mr. Markham with anything. The jury was charged to weigh the evidence, including the credibility of the witnesses. In weighing the evidence, the jury found Mr. Markham guilty of the count charged. Based on the record, the jury's decision to convict is supported by substantial evidence. Accordingly, Mr. Markham's first count is DENIED.

### Denial of Right to Appeal

    In his third count, Mr. Markham contends that his appellate counsel's failure to appeal his conviction and to pursue the transcript record culminated into a complete denial of his right to appeal. Mr. Markham alleges that he told his appellate counsel repeatedly to order the jury trial transcript and to appeal the preserved objections. Mr. Markham's claim is factually baseless and legally meritless.

    As set forth above, Mr. Markham's appellate counsel did order the jury trial transcripts and did

cause to have those transcripts transmitted to the Ninth Circuit. Thus, Mr. Markham's claim based on his mistaken belief that his appellate counsel failed to order the transcripts is denied.

In addition, there is no merit to Mr. Markham's contention that his appellate counsel failure to address preserved objections constitutes a denial of his right to appeal. First, Mr. Markham's counsel did file an appeal that advocated on behalf of him and his interests. Second, after a careful review of the trial transcripts, there were no preserved objections in the trial that would call into question or change the outcome of Mr. Markham's trial. The only objection of substance came from the government and related to defense counsel's question related to the specific details of a plea agreement. After a side-bar discussion, Mr. Markham's counsel reflected upon the Court's caution and withdrew the question. This decision benefitted Mr. Markham. See, Morgan v. Krenke, 232 F.3d 562 (7th Cir. 2000) (defendant with nasty criminal record may make strategic decision that it is better to remain silent than to let jury find out too much about him, but his constitutional rights are not thereby violated.). Accordingly, Mr. Markham's third count is DENIED.

## Certificate of Appealability

28 U.S.C. § 2253(c)(1) precludes an appeal from a final order in section 2255 proceedings unless a circuit justice or judge issues a certificate of appealability ("COA"). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2); *see Williams v. Calderon*, 83 F. 3d 281, 286 (9th Cir. 1996). A COA issues when defendant demonstrates the questions raised are "debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983). In the absence of a COA, no appeal in a section 2255 proceeding may be heard. 28 U.S.C. § 2253(c).

This Court has reviewed the record of this case and finds no jurist of reason could debate the correctness to deny defendant collateral relief. *See Clark v. Lewis*, 1 F. 3d 814, 819 (9th Cir. 1993). On the merits of this case, reasonable jurists would not debate the constitutionality of Mr. Markham's claims. Accordingly, a certificate of appealability is improper.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court DENIES in full Mr. Markham's section 2255 motion, and DIRECTS the clerk of court to terminate the motion in the criminal action and to close the civil action.

IT IS SO ORDERED.

**Dated:**   July 1, 2010                              /s/ Lawrence J. O'Neill
                                                               UNITED STATES DISTRICT JUDGE